555 S.E.2d 386

**Anand B. PATEL, Petitioner,**

v.

**Nalini Raja PATEL, Respondent.**

No. 25371.

Supreme Court of South Carolina.

Heard Aug. 7, 2001.

Decided Oct. 31, 2001.

Rehearing Denied Dec. 12, 2001.

Robert L. Widener, McNair Law Firm, of Columbia; and John O. McDougall and Michael W. Self, of McDougall & Self, of Sumter, for petitioner.

Harvey L. Golden and J. Michael Taylor, of Golden, Taylor & Potterfield, of Columbia, for respondent.

Chief Justice TOAL.

Anand B. Patel ("Husband") was granted certiorari to review the Court of Appeals' unpublished decision in *Patel v. Patel*, Op. No.2000–UP–653 (S.C. Ct.App. filed October 26, 2000).

### FACTUAL/PROCEDURAL BACKGROUND

On July 7, 1980, Husband and Nalini Raja Patel ("Wife") were married after a short engagement in Vancouver, British Columbia. Shortly thereafter, the parties moved to Chilliwack, where Husband worked as a pharmacist. The parties returned to Vancouver in 1982 and purchased a pharmacy. By this time, Wife had received her work permit, which took about two years to process, and began working in the pharmacy as a cashier or stock person. Wife worked in the pharmacy from approximately 9:00 a.m. to 6:00 p.m. She was never paid a salary.

Husband and Wife moved to Dillon, South Carolina in 1986, when Husband purchased a Days Inn Hotel. The parties lived on the premises as resident owners. Shortly after moving, their first child, Anish, was born on November 27, 1986. Husband and Wife had two more children, Ria, born on June 21, 1990, and Ashoo, born on June 22, 1992. Wife worked in the hotel with Husband until Ria was born. However, Wife did not receive a salary.

The parties lived a modest lifestyle. Although the hotel business supplied a $15,000 a month income, the parties lived in a two bedroom "apartment" at the hotel. Wife slept with the three children in one bedroom, and Husband slept in the other. Their modest lifestyle allowed the parties to acquire a $2.6 million dollar marital estate.

Husband and Wife separated in October 1995. Husband then initiated this action against Wife. Pursuant to the Temporary Order issued by the family court, Husband was awarded temporary possession of the marital "quarters" at the hotel, but was required to provide suitable accommodations for Wife outside the hotel. Husband purchased a house for Wife for approximately $75, 000. The Order also awarded Husband and Wife alternating temporary custody of the children.

A final divorce decree was issued on October 23, 1997. Under the terms of the divorce decree (1) Husband was awarded custody of the three children and child support; (2) the marital property was divided 65% to the Husband and 35% to the Wife; (3) Wife's request for alimony was denied; (4) Wife was ordered to pay $41,920.94 towards Husband's attorney's fees and costs; and (5) Wife was ordered to pay 14% of the fees and costs associated with the Guardian *Ad Litem* ("GAL").

Wife filed a Notice of Appeal on June 16, 1998. Two weeks later, Wife received a letter from Husband stating he intended to relocate with the children to Southern California. Wife filed a motion with the Court of Appeals to prevent Husband from moving with the children during the appeal. The Court of Appeals issued an Order, dated July 31, 1998, which remanded the issue to the trial court for consideration. The matter was heard on August 19, 1998, in front of the same judge who presided over the divorce proceedings. On August 25, 1998, the judge issued a ruling allowing Husband to relocate with the children to California. Husband moved with the children to California around September 6, 1998. On September 22, 1998, the judge issued a written order allowing the children to relocate. Wife filed a petition for supersedeas with the Court of Appeals. On October 20, 1998, the Court of Appeals issued an order directing Husband to return the children to South Carolina. However, after oral argument

before a three-judge panel, the Court of Appeals vacated its prior order of October 20, 1998, and denied Wife's petition for supersedeas.

The Court of Appeals consolidated Wife's appeal from both the divorce decree and the Order allowing the children's removal from South Carolina. On October 26, 2000, the Court of Appeals issued an unpublished decision in which it (1) reversed the family court's custody award to Husband and ordered him to return the children to South Carolina; (2) reversed the denial of alimony to Wife and remanded the issue of her entitlement to alimony to the trial court; (3) reversed the award of attorney's fees to Husband; and (4) affirmed the equitable division award of 65% of the marital property to Husband and 35% to Wife.

Both Husband and Wife petitioned for certiorari. This Court granted Husband's petition on the issues of custody and alimony, and the issues before this Court are:

I.   Did the Court of Appeals err in reversing the family court's custody decision, thereby awarding custody of the parties' children to Wife?

II.  Did the Court of Appeals err in reversing the family court's denial of alimony to Wife?

## Law/Analysis

### I.  Child Custody

Husband argues the Court of Appeals erred in reversing the decision of the family court and granting custody of the three children to Wife. We find Wife did not receive a fair hearing on child custody, and remand this case to the family court for a new hearing on child custody.

In a custody case, the best interest of the child is the controlling factor. *Ingold v. Ingold,* 304 S.C. 316, 404 S.E.2d 35 (Ct.App.1991). The family court considers several factors in determining the best interest of the child, including: who has been the primary caretaker; the conduct, attributes, and fitness of the parents; the opinions of third parties (including GAL, expert witnesses, and the children); and the age, health, and sex of the children. *See* Roy T. Stuckey & F. Glenn Smith, *Marital Litigation in South Carolina* 446 (1997).

When determining to whom custody shall be awarded, all the conflicting rules and presumptions should be weighed together with all the circumstances of the particular case, and all relevant factors must be taken into consideration. *Woodall v. Woodall*, 322 S.C. 7, 471 S.E.2d 154 (1996); *Ford v. Ford*, 242 S.C. 344, 130 S.E.2d 916 (1963).

The family court appointed a non-lawyer Guardian *Ad Litem* (GAL) in February of 1996 to review this case. The GAL testified at the final hearing in May of 1997, after having 15 months to review the case. As stated by the family court in its final divorce decree filed in October 1997, the GAL had "a substantial amount of personal involvement" in this case. However, the GAL's actions in this case give rise to concern. For example, the GAL did not keep notes of her observations during her investigation and failed to produce a written report. In addition, the GAL contacted Husband's counsel 19 times, but never contacted Wife's counsel. The GAL stated she had "some" telephone contact with Wife, but spoke on the phone with Husband "very frequent[ly]." After an incident with Wife, the GAL testified she did not feel comfortable enough to meet with Wife, and did not visit her from July 14 to October 21, 1996. During the time she did not feel comfortable meeting with Wife, she continued to meet with the children while in Husband's care. Furthermore, the GAL listened to a phone conversation between Husband and Wife without Wife's knowledge. The GAL also taped a conversation with Anish concerning an incident that happened while they were in Wife's custody. Finally, the GAL testified that "she was taken aback" by Wife's request that she be removed from the case. In sum, the GAL did not conduct an objective, balanced investigation. She did not afford each party a balanced opportunity to interact with her. Her method of evaluation created a high potential for bias towards Husband.

The record reveals the psychiatrist as well as the family court relied on the GAL's findings and testimony when deciding custody should be awarded to Husband. In fact, the family court explicitly stated it placed "a great deal of reliance" on the GAL's report when deciding the custody issue.

After reviewing the testimony from the family court, we find Wife was not afforded a fair hearing due to the

performance of the GAL appointed in this case. Furthermore, since the custody question was hotly contested, with no clear choice for custodial parent apparent from the testimony in the record, we cannot find the admission of the GAL's recommendation was harmless error. Therefore, we find the GAL's actions and inactions so tainted the decision of the family court in this case, as to deny Wife due process. U.S. CONST. amend. XIV; *South Carolina Dep't of Soc. Serv. v. Beeks*, 325 S.C. 243, 481 S.E.2d 703 (1997) (recognizing the importance of due process in a child custody case).

A guardian *ad litem*, as the later phrase suggests, is a guardian for litigation. Traditionally, GALs were lawyers appointed by the court to appear in a lawsuit on behalf of a minor or incompetent. Over time, the role of the guardian was defined by statute as well as by common law. Lay persons as well as lawyers were appointed by the court in cases to protect those the court or legislature deemed could not protect themselves. For example, GALs were appointed in cases of abuse and neglect, and in cases involving an incompetent person. The legislature has enacted some statutes regarding GALs. In the context of children, the legislature has enacted S.C.Code Ann. § 20–7–121 (Supp.2000) (creating a GAL program for children in abuse and neglect proceedings); Section 2–7–1570 (mandating the appointment of a GAL for children involved in a termination of parental rights proceeding); Section 20–7–952 (requiring a GAL in a paternity action); and Section 20–7–1732 (requiring the appointment of a GAL for children involved in an adoption proceeding).

Over time, it has become the custom in this state, and many others, for the family court to appoint GALs in private custody disputes. The GAL functions as a representative of the court, appointed to assist the court in making its determination of custody by advocating for the best interest of the children and providing the court with an objective view. *Fleming v. Asbill*, 326 S.C. 49, 483 S.E.2d 751 (1997); *Townsend v. Townsend*, 323 S.C. 309, 474 S.E.2d 424 (1996). Standard setting for GALs in this "new" role has been very ad hoc. The legislature has set standards for a GAL appointed in

abuse and neglect cases.[1]  However, there has been no com-. prehensive or coherent approach for the setting of standards for the use of GALs in private custody disputes.  The judicial, legislative, and executive branches need to take a broader look at GALs who function in this capacity.[2]

While a more complete approach is being examined by the three branches of government, this Court will set forth some base line standards.  In connection with developing a recommendation to the family court, a GAL shall: (1) conduct an *independent, balanced, and impartial* investigation to determine the facts relevant to the situation of the child and the family, which should include:  reviewing relevant documents; meeting with and observing the child in the home setting and considering the child's wishes, if appropriate;  and interviewing parents, caregivers, and others with knowledge relevant to the case; (2) advocate for the child's best interests by making specific and clear recommendations, when necessary, for evaluation, services, and treatment for the child and the child's family; (3) attend all court hearings and provide accurate, current information directly to the court; (4) maintain a complete file with notes rather than relying upon court files;

---

1.  S.C.Code Ann. § 20–7–122 (Supp.2000) provides

The responsibilities and duties of a guardian ad litem are to:

(1)  represent the best interest of the child;

(2)  advocate for the welfare and rights of a child involved in an abuse or neglect proceeding;

(3)  conduct an independent assessment of the facts, the needs of the child, and the available resources within the family and community to meet those needs;

(4)  maintain accurate, written case records;

(5)  provide the family court with a written report, consistent with the rules of evidence and the rules of court, which includes without limitation evaluation and assessment of the issues brought before the court and recommendations for the case plan, the wishes of the child, if appropriate, and subsequent disposition of the case;

(6)  monitor compliance with the orders of the family court and to make motions necessary to enforce the orders of the court or seek judicial review;

(7)  protect and promote the best interest of the child until formally relieved of the responsibility by the family court.

2.  In July 2001, Senator Glenn McConnell, President Pro Tempore of the South Carolina Senate announced the formation of a task force to make recommendations regarding the use of GALs. To date, this task force has conducted several public hearings throughout the state.

and (5) present to the court and all other parties clear and comprehensive written reports, including but not limited to a final report regarding the child's best interest, which includes conclusions and recommendations and the facts upon which the reports are based. In consideration for their services, GALs should receive reasonable compensation.

In conclusion, because the evidence in this case does not clearly weigh in favor of either Husband or Wife as custodial parent, the untrustworthy opinion of the GAL denied Wife a fair hearing on the custody issue. Accordingly, we remand the case for a new custody hearing.[3]

## II. Alimony

■ Husband argues the Court of Appeals erred in reversing the family court's denial of alimony to Wife. We disagree.

The family court denied Wife's request for alimony. The court reasoned there was no need for alimony based on the following findings: (1) Wife was awarded 35% of the marital estate ($913,278), which should provide her with approximately $5,000 in living expenses per month; (2) Husband was granted custody of the children; (3) the parties had a modest standard of living during the marriage; and (4) although Wife had only a 12th grade education and had no work experience during the 15 year marriage other than working in the family business without pay and caring for the minor children, the equitable division would provide Wife with adequate monthly income so that Wife's need to become employed was "questionable."

The Court of Appeals reversed the decision of the family court and remanded for a determination of an alimony award. The Court of Appeals found Wife's lack of appropriate education, her unsalaried work in both family businesses, her role as a homemaker, and the fact the parties lived well below their means entitled her to alimony. After considering all the factors provided in S.C.Code Ann. § 20–3–130(c) (Supp.2000), we agree with the Court of Appeals.

---

**3.** The children in this case have been through a tremendous ordeal, and this Court hopes a final determination of custody can be made in a reasonable time. This Court's order is not an expression of preference for one party over the other as the custodial parent for the minor children.

Section 20–3–130(c) sets forth thirteen factors to be considered in arriving at an award of alimony: (1) the duration of the marriage and the ages of the parties at the time of the marriage and separation; (2) the physical and emotional condition of each spouse; (3) the educational background of each spouse and the need for additional education; (4) the employment history and earning potential of each spouse; (5) the standard of living established during the marriage; (6) the current and reasonably anticipated income of each spouse; (8) the marital and nonmarital properties of the parties; (9) the custody of any children; (10) marital misconduct or fault; (11) the tax consequences of the award; (12) the existence of support obligations to a former spouse; and (13) other factors the court considers relevant.

■ The family court discussed the duration of the marriage, the ages of the parties, the physical and emotional condition of each spouse, the standard of living established during the marriage, the custody of the children, the lack of marital misconduct by either party, and the tax consequences. However, the family court overlooked several important factors when it denied Wife's request for alimony: (1) Wife's lack of employment history and earning potential; (2) her educational needs to obtain adequate employment; (3) her sacrifice of a salaried job to work in the family business; and (4) her role as a primary caretaker for the children and the marital home for more than 15 years. Furthermore, it was inappropriate to hold Wife to the "standard of living enjoyed during the marriage" when Husband refused to improve the quality of the living quarters and lifestyle even though there were funds to do so. Husband deliberately chose to keep his family in a two bedroom hotel apartment, made Wife and three children share a bedroom, and refused to allow them to move into a home. Husband's deliberate choice to allow his family to live well below their means in inadequate housing should not be used against Wife in determining the monthly income she would need to maintain the standard of living she enjoyed during the marriage. The family court should look at all the fruits of the marriage in determining whether alimony is appropriate.

Without alimony, Wife, who has no employment history because she was a homemaker allowing her husband to pursue

a career and has considerable less education than Husband; will be required to live substantially below the standard of living Husband will enjoy. *See McMurtrey v. McMurtrey,* 272 S.C. 118, 249 S.E.2d 503 (1978), *Eagerton v. Eagerton,* 265 S.C. 90, 217 S.E.2d 146 (1975) (taking into account the net wealth of the paying spouse); *See also* 27B C.J.S. *Divorce* § 369 (1986) ("Permanent alimony is awarded on considerations of equity and public policy. The responsibility of the court is to provide a just and equitable adjustment of the economic resources of the parties so that they can reconstruct their lives, by attempting to insure that the parties separate on as equal a basis as possible.").

Based on the foregoing, we find the Court of Appeals correctly reversed the family court's decision to deny alimony to Wife. Accordingly, we remand the case to the family court for a determination of alimony.

## CONCLUSION

Based on the foregoing reasons, we **REMAND** this case to the family court for a new custody hearing and for a determination of alimony.

MOORE, WALLER and BURNETT, JJ., and Acting Justice ALISON RENEE LEE, concur.