THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Dianne Elizabeth Huggins, Appellant,
v.
Christopher W. Catledge, Respondent.
 
 
 

Appeal From Lancaster County
Brooks P. Goldsmith, Family Court Judge

Unpublished Opinion No. 2006-UP-101
Submitted February 1, 2006  Filed February 17, 2006

AFFIRMED

 
 
 
Mitchell A. Norrell, of Lancaster, for Appellant.
Philip E. Wright, of Lancaster, for Respondent.
 
 
 

PER CURIAM:  Dianne Elizabeth Huggins appeals from the family courts denial of her action for a change of custody of the parties minor son.  We affirm. [1] 
FACTS
Huggins and Christopher W. Catledge were divorced in 2000.  In accordance with the parties joint custody agreement, Catledge was granted primary custody of their son Christian.  At the time of the hearing in this action, Christian was seven.  In September of 2003, Huggins brought the current action seeking a change of custody.  In her complaint, Huggins requested a guardian ad litem be appointed.  After a temporary hearing on July 8, 2004, the family court sent a letter to Catledges attorney with instructions for preparation of an order.  In this letter, the court denied Huggins request for appointment of the guardian.  The record on appeal, however, does not contain any order from this hearing.  
After a final hearing, the family court issued an order holding the change of circumstances relied upon by Huggins was insufficient to justify a change of custody.  This appeal followed.  
STANDARD OF REVIEW
In appeals from the family court, this court may find facts in accordance with its own view of the preponderance of the evidence.  Rutherford v. Rutherford, 307 S.C. 199, 414 S.E.2d 157 (1992).  However, this broad scope of review does not require us to disregard the family courts findings.  Bowers v. Bowers, 349 S.C. 85, 561 S.E.2d 610 (Ct. App. 2002).  Nor must we ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  Cherry v. Thomasson, 276 S.C. 524, 280 S.E.2d 541 (1981).  Our broad scope of review does not relieve appellant of her burden to convince this Court that the family court committed error.  Skinner v. King, 272 S.C. 520, 522-23, 252 S.E.2d 891, 892 (1979).
LAW/ANALYSIS
1.     Guardian ad Litem
Huggins argues the family court erred in refusing to appoint a guardian ad litem.  We first question whether this issue is properly before this court.  After the temporary hearing, the family court sent a letter to the parties stating that it was denying the request for appointment of a guardian.  Although the court instructed Catledges attorney to prepare an order, it does not appear from the record that any such order was ever entered.  
An order is not final until it is written and entered by the clerk of court.  First Union Natl Bank of S.C. v. Hitman, Inc., 306 S.C. 327, 411 S.E.2d 681 (Ct. App. 1991), affd, 308 S.C. 421, 418 S.E.2d 545 (1992).  Until an order is written and entered by the clerk of court, the judge retains discretion to change his mind and amend his ruling accordingly.  Id.  An oral ruling is not a final ruling on the merits nor is it binding on the parties until it has been reduced to writing, signed by the judge, and delivered for recordation.  Bayne v. Bass, 302 S.C. 208, 394 S.E.2d 726 (Ct.App.1990) The Decree must be in writing and until such time the judge may modify, amend or rescind such an oral ruling.  Id.  
The family court in its letter even cautioned:  As always, I reserve the right to change or modify this decision prior to signing the order.  Accordingly, we find that as Huggins failed to secure a final ruling on request for appointment of a guardian, she may not raise this issue on appeal.  
Furthermore, we find no reversible error in the family courts denial of the request for appointment of a guardian.  

Section 20-7-1545 provides:
 
In a private action before the family court in which custody or visitation of a minor child is an issue, the court may appoint a guardian ad litem only when it determines that:
(1) without a guardian ad litem, the court will likely not be fully informed about the facts of the case and there is a substantial dispute which necessitates a guardian ad litem; or
(2) both parties consent to the appointment of a guardian ad litem who is approved by the court . . . .
 

S.C. Code Ann. § 20-7-1545 (Supp. 2005) (emphasis added).
In private actions, a guardian functions as a representative of the court, appointed to assist the court in making its determination of custody by advocating for the best interest of the children and providing the court with an objective view.  Patel v. Patel, 347 S.C. 281, 287, 555 S.E.2d 386, 389 (2001).  However, the family court judge, not the guardian, is the ultimate decision-maker with respect to visitation and the best interest of the child.  Arnal v. Arnal, 363 S.C. 268, 609 S.E.2d 821 (Ct. App. 2005). 
In its letter, the court stated it was temporarily denying the request for a guardian noting that it could not make a finding that it would not be fully informed of the facts without such an appointment.  The parties presented numerous witnesses who testified as to Christians education, dental care, and home life, and the new stability in the mothers life.  The family court, which was the ultimate decision maker with regards to the custody of the child, was able to make its decision based on the evidence presented.  Accordingly, we find no error in its denial of Huggins request for appointment of a guardian.  
2.  Change of custody
Huggins argues the family court erred in failing to find a change of circumstances sufficient to warrant a change of custody and in holding it was in Christians best interests to stay with his father.  We disagree.  
Because the best interest of the child is the overriding concern in all child custody matters, when a non-custodial parent seeks a change in custody, the non-custodial parent must establish the following:  (1) there has been a substantial change in circumstances affecting the welfare of the child and (2) a change in custody is in the overall best interests of the child.  Latimer v. Farmer, 360 S.C. 375, 602 S.E.2d 32 (2004).  As the one seeking the change of custody, Huggins bears the burden of establishing both of these criteria.  Id.  In reaching a determination as to custody, the family court should consider how the custody decision will impact all areas of the childs life, including physical, psychological, spiritual, educational, familial, emotional, and recreational aspects.  Additionally, the court must assess each partys character, fitness, and attitude as they impact the child.  Shirley v. Shirley, 342 S.C. 324, 330, 536 S.E.2d 427, 430 (Ct. App. 2000).  
Huggins asserts several changed circumstances that she claims justify a change of circumstances.  Since the original custody agreement, Huggins has remarried and established a more stable home environment.  She and her new husband have a child, who was nineteen months old at the time of the hearing.  Remarriage alone is not sufficient to warrant a change in custody.  Fisher v. Miller, 288 S.C. 576, 344 S.E.2d 149 (1986).  Catledge has also moved since the divorce.  The supreme court held, [A] change in Fathers residence is not itself a substantial change in circumstances affecting the welfare of Child, which justifies a change in custody.  Latimer, 360 S.C. at 382, 602 S.E.2d at 35.
Huggins contends that she has now taken a job that allows her to spend more time with the child than the father can.  Huggins works until 3:30 each day and would be able to be with Christian until his bedtime.  Catledge is currently working third shift, from 10:00 p.m. until 6:00 a.m, Sunday through Thursday.  On the nights he works, Christian and Catledges daughter from a prior relationship spend the night at Catledges mothers home.  Catledges mother testified the children love staying with her overnight.  Although Catledge may be away from the children while they sleep, he is available to care for them during normal waking hours.  
Huggins also contends that Catledge neglected Christians dental care.  At his visit on June 13, 2002, Christian was diagnosed as having four cavities in his back teeth.  The dentists records clerk testified that children usually do not lose these teeth until they are ten to twelve years old.  Christian missed the next scheduled appointment a month later and did not return to the dentist until over a year later.  At that time, in addition to one new cavity, the four original cavities remained with one in need of a possible pulpectomy[2].  Catledge testified that the dentist told him that he had an option of delaying treatment if the cavities were not causing the child any pain.  In addition, Catledge stated the delay was due to his trying to obtain insurance cards from Huggins so he could take Christian to the dentist.  Christian has since had the cavities filled one at a time and is having regular dental visits.  The family court concluded that the childs dental needs were not neglected by the father.  
Finally, Huggins contends the fact that Christian failed first grade is grounds for a change of custody.  Christians teacher testified that although the child was well behaved in class, he was a slow learner who did better in math than in reading.  His performance was inconsistent with his doing better one six-weeks and then not as well the next six-weeks.  She stated that there were times when he needed extra help at home and Catledge always responded to her requests for extra help, including coming in for conferences.  Catledge authorized the child to enroll in the programs available to assist Christian and Christian successfully completed these programs.  However, at the end of the year, Christian was right on the borderline and after conferencing, the teacher and Catledge decided to hold the child back.  The teacher testified there was nothing that could have been done over the summer that would have enabled the child to be promoted to second grade.  
Huggins admitted that she had no contact with Christians school until after she learned that he would not be promoted.  At this point she contacted a tutor for the child, although Catledge hired someone else to tutor him.  In addition, after Catledge informed her no summer school was available, Huggins discovered an available summer school program, which Catledge enrolled the child in.  However, Catledge allowed the child to miss one week of the four-week class to go to church camp.  Huggins acknowledged that at the time of the hearing, the child was doing fine in school with no extra tutorial help.  We find no evidence that Catledge was neglectful of the childs educational needs.  
The child attends church with Catledge at the same church Huggins parents attend.  Catledge testified the child is in the R.A. program and would be playing on the basketball team.  Catledge will be coaching.  
The family court noted that both parties acknowledge that the other party is a fit parent.  It held, [The child] is doing well in the care of his father in an environment where he is comfortable and surrounded by family and friends.  Disrupting that custodial arrangement would not be in his best interests.  An appellate court should be reluctant to substitute its own evaluation of the evidence on child custody for that of the trial court.  Woodall v. Woodall, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996).  Considering the record as a whole, we find no error in the family courts denial of Huggins request for a change of custody.  
CONCLUSION
The order of the family court denying Huggins request for a change of custody based on a change of circumstances is 
 AFFIRMED.  
GOOLSBY, HUFF, and STILWELL, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] There is no evidence in the record that the child actually had a pulpectomy.