710 S.E.2d 76

**Demetra Kerhoulas GRUMBOS, Respondent/Appellant,**

v.

**George Spyros GRUMBOS, Appellant/Respondent.**

**No. 4825.**

Court of Appeals of South Carolina.

Heard Feb. 8, 2011.
Decided April 27, 2011.
Rehearing Denied June 23, 2011.

34

36

O.W. Bannister, of Greenville, for Appellant–Respondent.

Robert M. Rosenfeld, of Greenville, for Respondent–Appellant.

WILLIAMS, J.

On appeal, George Grumbos (Husband) contests the family court's decision to impute certain income to Husband in setting Demetra Grumbos' (Wife) entitlement to both temporary and permanent alimony. Husband also argues the family court failed to properly consider the requisite statutory factors in awarding Wife permanent periodic alimony and failed to consider certain marital debts when it divided the marital estate. On cross-appeal, Wife claims the family court erred in finding Husband's overpayment of temporary alimony negated his requirement to pay Wife attorney's fees and costs in the final order. We affirm in part, reverse in part, and remand.

## FACTS

On September 21, 2006, Wife filed a complaint, seeking among other things, separate support and maintenance, custody of the parties' minor children, child support, and alimony. In response, the family court issued a temporary order on December 18, 2006, wherein the court found Husband earned $7,000 per month and Wife earned $550 per month. Based upon this finding, the family court awarded Wife $2,500 per month in temporary alimony. Three months later, Husband

was found in contempt for failing to pay alimony and child support. On March 26, 2007, Husband filed a motion to reduce these obligations, which the family court denied.

At the final hearing on September 23–24, 2008, the family court permitted Wife to amend her complaint to seek a divorce on the ground of one year's continuous separation. During the two-day trial, the family court heard testimony from the parties and their witnesses. It also received into evidence numerous financial documents pertaining to the parties' income as well as evidence regarding the assets and debts of the marital estate.

The following evidence relevant to this appeal was adduced at the final hearing. Husband and Wife married on January 21, 1996, in Greenville, South Carolina. When the parties married, Husband was thirty-one years old and Wife was thirty-three years old. This was the parties' first marriage, and two minor children were born of the marriage. The parties were married for approximately ten years before they separated on September 21, 2006.

Prior to the parties' marriage, Wife earned a Bachelor of Economics degree from Clemson University, but she had not been employed outside the home in a full-time capacity since the birth of their first child in July 1998. Husband graduated from high school and took college courses from Greenville Technical College but never graduated. Husband, however, worked at his parents' restaurant from an early age and had extensive experience in hosting, serving, and cooking, as well as operating and managing his parents' restaurant. At the time of trial, Husband earned $10 per hour working as a host at his brother-in-law's restaurant. Similarly, Wife earned $10 per hour working part-time as a hostess at a local restaurant. At the time of the divorce, both parties were in good health, despite a noncancerous tumor being removed from Husband's abdomen in 2006.

In its final order, the family court found both parties were underemployed. The court found Wife had the ability to work full-time at her present job and earn a gross monthly wage of $1,733, but because Wife earned $2,000 per month in the past, the family court imputed this amount to Wife as her gross monthly wage.

In determining Husband's gross monthly income, the family court noted the discrepancy between Husband's W–2 form from the family restaurant and his testimony and financial declarations. According to Husband's testimony, he worked forty hours per week; however, a review of his W–2 forms demonstrated Husband's gross annual income reflected a workweek of no more than twenty hours.[1] The family court noted Wife documented Husband's payment of almost $54,000 in household expenses in the preceding twelve months, which computed to monthly expenses averaging approximately $4,500. Because of the discrepancies in Husband's documentation[2] and the family court's determination that Husband's testimony lacked credibility, it imputed $4,500 per month to Husband as his gross monthly income.

Also at issue during trial were the income and debt from Husband's family business ventures. Husband contended that while he held varying ownership interests in three family-held limited liability corporations,[3] the vast majority of the income from these businesses was a result of one-time events. Despite Husband's argument, the family court found based on the K–1 forms filed with the tax returns for these businesses, Husband earned $92,902 in 2004, $69,400 in 2005, and $80,865 in 2006.

In assessing the parties' debts, the family court considered three promissory notes in the amounts of $80,000, $23,000, and $6,000, which were executed by Husband on May 1, 2006, to

---

1. For instance, Husband claimed he earned $10,000 in 2004. Based upon Husband's stated hourly wage of $10 per hour, this computes to a nineteen-hour work week based on a fifty-two week year, which is approximately half of the hours Husband testified he worked at trial.

2. For example, Husband's financial declaration submitted at the temporary hearing denoted his gross monthly income as almost half of what he submitted he earned on the date of the final hearing.

3. Husband held a 2% interest in S & L Properties, LLC, a 50% interest in G & L Properties, LLC, and a 50% interest in Panagia Enterprises, LLC. Husband's parents owned 96% of S & L Properties, and Husband's brother owned the remaining 50% interest in G & L Properties and Panagia Enterprises. The primary asset of S & L Properties is a CVS building, which is situated on land owned exclusively by G & L Properties. Panagia's primary asset is a large parcel of property, which contains unimproved raw land and a small office park built by Husband and his brother.

his brother, his brother-in-law, and his parents, respectively. The court found each of these debts was nonmarital and noted Wife denied any knowledge of these notes or the underlying debts securing the notes.

Based on these findings, the family court awarded the parties a divorce on the ground of one year's continuous separation and granted Wife permanent periodic alimony in the amount of $630 per month. In dividing the parties' assets and debts, the family court found all debts pertaining to the family-held LLCs, including the three promissory notes, were nonmarital property. The family court awarded Wife attorney's fees; however, in doing so, it found Husband overpaid temporary alimony in excess of two years. Consequently, the family court retroactively reimbursed Husband for this overpayment by crediting Husband the balance of Wife's attorney's fees. Husband appealed, and Wife cross-appealed.

## STANDARD OF REVIEW

In appeals from the family court, this court has the authority to find facts in accordance with our view of the preponderance of the evidence. *Greene v. Greene*, 351 S.C. 329, 335, 569 S.E.2d 393, 397 (Ct.App.2002). This broad scope of review does not require us to disregard the findings of the family court. *Id.* Neither are we required to ignore the fact that the family court, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Id.*

## LAW/ANALYSIS

### I. Husband's Appeal

#### A. Imputing Income to Husband

##### a. Temporary Alimony

Husband claims the family court erred in initially imputing $7,000 per month to Husband as income for purposes of awarding Wife $2,500 per month in temporary alimony.[4] We disagree.

---

4. Wife claims this issue is not preserved for review because Husband failed to appeal the alimony award after the temporary hearing. We

 The allowance of temporary separate maintenance and support, or temporary alimony, is a matter largely addressed to the discretion of the family court whose ruling will not be disturbed on appeal absent an abuse of discretion. *Armaly v. Armaly*, 274 S.C. 560, 562, 266 S.E.2d 68, 69 (1980).

In awarding Wife $2,500 in temporary alimony, the family court found Husband earned $7,000 per month and Wife earned $550 per month. This finding was based on the financial declarations of the parties, their affidavits, and their respective tax returns. While the family court may only have been privy to that limited evidence based on the timing and nature of the temporary hearing, we discern no abuse in the family court's award of $2,500 per month in temporary alimony.

As noted by the family court in its final order, credibility and veracity of the parties were key factors in this case. Husband claimed he earned only $825 per month at the temporary hearing, yet his financial declaration submitted before the final hearing reflected a gross monthly income of $1,733. Husband failed to explain how his income doubled, despite his concession that he was working for the same wage with the same hours for the same employer. We find the family court was in the best position to question the accuracy of Husband's initial claim that he earned only $825 per month and thus was within its discretion to accordingly weigh Husband's testimony in its decision to impute additional income to him. *See Marchant v. Marchant*, 390 S.C. 1, 8, 699 S.E.2d 708, 712 (Ct.App.2010) (finding question of husband's credibility was a function of the family court judge who was in the best position to determine whether husband properly stated his income for purposes of calculating alimony and child support).

---

disagree. In doing so, we reiterate that temporary hearings are *not* de facto final hearings, and we adhere to the principle that temporary orders must be without prejudice to the rights of the parties at the final hearing. *See Rimer v. Rimer*, 361 S.C. 521, 527 n. 6, 605 S.E.2d 572, 575 n. 6 (Ct.App.2004). As this court aptly stated in *Rimer*, "To assign weight to the amount of support awarded pendente lite or view the award as having any precedential value at the merits hearing or on appeal would discourage parties from amicably agreeing upon temporary support for fear the slightest concession would prejudice their position at the final hearing." *Id.*

Husband admits he received over $243,000 in revenue from the family-owned LLCs between 2004 and 2006, but he contends this income was nonrecurring, and as such, it was not a proper basis on which to award Wife temporary alimony. Even if we accept Husband's argument that this revenue was nonrecurring, Husband earned $80,856 alone in 2006 (or $6,738 per month) from his restaurant employment and LLCs, which provides ample basis for the family court's decision to impute $7,000 per month to Husband as income. Additionally, Husband never contested Wife's calculation of $4,100 per month in household expenses. Because Wife only earned $550 per month at the time of the temporary hearing, we discern no error in the family court's efforts to maintain the status quo by requiring Husband to pay Wife $2,500 per month in temporary alimony. *See Cannarella v. Cannarella,* 275 S.C. 516, 517–18, 273 S.E.2d 529, 529–30 (1980) (finding wife was entitled to temporary alimony considering her income, necessities, and husband's means, particularly when wife earned $372 per month as a waitress, husband earned $7,000 per month from his restaurant business, and wife's monthly living expenses were $1,900).

### b. Permanent Alimony

■ Husband also claims the family court erred in imputing $1,467 per month to Husband as additional income for purposes of calculating Wife's permanent alimony award. We disagree.

■ "It is well-settled in South Carolina that an award of alimony should be based on the payor spouse's earning potential rather than merely his current, reported earnings." *Messer v. Messer,* 359 S.C. 614, 629, 598 S.E.2d 310, 318 (Ct.App. 2004) (internal citation omitted). As a result, the family court has the discretion to impute income to a party with respect to awards of alimony or child support.

If the obligor spouse has the ability to earn more income than he is in fact earning, the court may impute income according to what he could earn by using his or her best efforts to gain employment equal to his capabilities, and an award of alimony based on such imputation may be a proper exercise of discretion even if it exhausts the obligor spouse's actual income.

*Dixon v. Dixon,* 334 S.C. 222, 240, 512 S.E.2d 539, 548 (Ct.App.1999) (internal quotation marks and citation omitted).

Husband claims the family court erred by basing Wife's alimony award on his past earnings rather than his reported earnings. In the case at hand, Husband testified he earns $10 per hour and routinely works forty hours per week as a host at his brother-in-law's restaurant. By Husband's calculation, this equates to $1,733 in gross income per month. Additionally, Husband claims he receives approximately $1,300 per month as rental income and business profits from the family-owned LLCs. In assessing Husband's income, the family court stated,

> It is difficult to determine Husband's earning potential. Husband's testimony lacks credibility. The only credible evidence before the [c]ourt as to the earning potential of Husband is that of Wife and Dr. Alford [Wife's expert witness] that the funds paid by Husband to Wife for the payment of household expenses for the twelve (12) months prior to the filing of this action was ... $53,990.63 ... which computes to a monthly average of ... $4,499.24 ... The Court imputes to Husband gross monthly income of ... $4,500 ... per month.

We find the family court properly weighed the testimony and the evidence to accurately assess Husband's income based on Husband's lifelong experience within the family's restaurant business. As noted by the family court, Husband failed to provide the court with a meaningful representation of his current income at trial. Specifically, Husband's reported earnings in his W–2 form reflected a twenty-hour work week, despite Husband's unwavering testimony that he worked forty hours per week. Moreover, conflicting evidence was presented regarding the amount of distributions Husband received from the LLCs as additional income. The distribution statements prepared by Husband's accountant for 2001, 2002, 2003, and 2006 varied by as much as $17,000 from the LLCs' tax returns.

Without a meaningful representation of Husband's current income, the family court was required to resort to other credible evidence, namely the parties' expenses, in assessing Husband's income. *See Spreeuw v. Barker,* 385 S.C. 45, 67,

682 S.E.2d 843, 854 (Ct.App.2009) (finding father's testimony and evidence presented at trial demonstrated father understated his income, so that his financial declarations were not meaningful representations of his income, which precluded father from complaining of the family court's ruling on appeal). Because both parties agreed their household expenses were approximately $4,100 per month, it was not unreasonable for the family court to conclude Husband earned at least that amount when determining Husband's income. Thus, the family court did not err in imputing additional income to Husband when it calculated Wife's permanent alimony award.

## B. Entitlement to Permanent Periodic Alimony

■ Husband contends the family court improperly awarded Wife permanent periodic alimony. We disagree.

■ An award of alimony rests within the sound discretion of the family court and will not be disturbed absent an abuse of discretion. *Dearybury v. Dearybury*, 351 S.C. 278, 282, 569 S.E.2d 367, 369 (2002). An abuse of discretion occurs if the court's ruling is controlled by an error of law or if the ruling is based upon findings of fact that are without evidentiary support. *Sharps v. Sharps*, 342 S.C. 71, 79, 535 S.E.2d 913, 917 (2000).

■ "The purpose of alimony is to provide the ex-spouse a substitute for the support which was incident to the former marital relationship." *Love v. Love*, 367 S.C. 493, 497, 626 S.E.2d 56, 58 (Ct.App.2006). "Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage." *Craig v. Craig*, 365 S.C. 285, 292, 617 S.E.2d 359, 362 (2005) (internal citations omitted). The objective of alimony should be to insure that the parties separate on as equal a basis as possible. *Patel v. Patel*, 347 S.C. 281, 291, 555 S.E.2d 386, 391 (2001) (internal citation omitted). Thus, "[i]t is the duty of the family court to make an alimony award that is fit, equitable, and just if the claim is well founded." *Allen v. Allen*, 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct.App.2001).

When awarding alimony, the family court considers the following factors: (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational back-

ground of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; (12) prior support obligations; and (13) other factors the court considers relevant. S.C.Code Ann. § 20–3–130(C) (Supp.2010); *Patel,* 347 S.C. at 290, 555 S.E.2d at 391 (holding that the family court is required to consider all relevant factors in determining alimony).

The family court awarded Wife $630 per month in permanent periodic alimony. In granting Wife alimony, the family court considered the relevant statutory factors from section 20–3–130(C), including: the length of the marriage, Husband's and Wife's education, the parties' health, both parties' past and current incomes, the parties' standard of living during the marriage, marital fault, and the marital and nonmarital properties of the parties.

Husband's primary contention is the family court failed to give proper weight to Wife's college degree and prior earnings in setting her alimony award.[5] The court clearly considered the parties' educational background, specifically that of Wife, when it stated, "[T]he Court is of the opinion that Wife has the educational background to enable her to obtain employment which provides her with an income and with benefits comparable to that which she had at her last full-time job." Further, despite Wife's stated income of $975 in her financial declaration, the family court imputed $2,000 to Wife as income based on her past employment and education. We find the family court's decision to award Wife only $630 in alimony in light of her current income and expenses to be reasonable under the circumstances. Accordingly, we find Husband's argument on this issue without merit.

---

5. Husband also argues the alimony award was an abuse of discretion to the extent the family court awarded Wife alimony based on the income it imputed to Husband. Because we find the family court properly imputed income to Husband, we decline to address this argument. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when a decision on a prior issue is dispositive).

## C. Pre-separation Debts

 Last, Husband claims the family court erred in omitting certain debts from the marital estate. We disagree.

 "Marital property" is defined as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation. . . ." S.C.Code Ann. § 20–3–630(A) (Supp.2010) (formerly § 20–7–473 (Supp.2007)). For purposes of equitable distribution, a "marital debt" is a debt incurred for the joint benefit of the parties regardless of whether the parties are legally liable or whether one party is individually liable. *Hardy v. Hardy,* 311 S.C. 433, 436–37, 429 S.E.2d 811, 813 (Ct.App.1993).

 Marital debt, like marital property, must be specifically identified and apportioned in equitable distribution. *Smith v. Smith,* 327 S.C. 448, 457, 486 S.E.2d 516, 520 (Ct.App.1997). In equitably dividing the marital estate, the family court must consider "liens and any other encumbrances upon the marital property, which themselves must be equitably divided, or upon the separate property of either of the parties, and any other existing debts incurred by the parties or either of them during the course of the marriage[.]" S.C.Code Ann. § 20–3–620(B)(13) (Supp.2010) (formerly § 20–7–472(13) (Supp.2007)). Section 20–3–620(B)(13) creates a rebuttable presumption that a debt of either spouse incurred prior to the beginning of marital litigation is a marital debt and must be factored in the totality of equitable apportionment. *Hickum v. Hickum,* 320 S.C. 97, 102, 463 S.E.2d 321, 324 (Ct.App.1995) (citing to former section 20–7–473). When the debt is incurred before marital litigation begins, the burden of proving a debt is nonmarital rests upon the party who makes such an assertion. *Id.* at 103, 463 S.E.2d at 324.

Husband enumerates three debts he claims were incurred during the parties' marriage. These debts include: (1) a $23,000 debt to his brother-in-law; (2) a $6,000 debt to his parents; and (3) a $95,000 [6] debt to two of the LLCs in which Husband holds an interest.

---

6. The initial note was executed in favor of Husband's brother, a co-owner in the LLCs, for $80,000 with the handwritten notation that the final amount was to be determined by their accountant.

In excluding these debts from the marital estate, the family court considered the intra-family nature of the debts and noted the lack of credible documentation and testimony to substantiate these debts. *See Allen v. Allen,* 287 S.C. 501, 506–07, 339 S.E.2d 872, 875–76 (Ct.App.1986) (finding loans from close family members must be closely scrutinized for legitimacy, particularly when the parties present conflicting evidence over the timing and amount of the loans). While Husband personally executed a note for all of these debts on May 1, 2006, neither Husband's brother-in-law nor his parents testified at trial to substantiate why, when, or how these debts were incurred. Husband claimed the notes were all executed on May 1, 2006, because of a possible life-threatening tumor; however, the family court believed Wife's testimony that the execution of the notes occurred shortly after an incident that ultimately led to the demise of the marriage. Further, even though Husband claimed these debts were incurred over the course of the marriage, Husband failed to show either he or Wife ever attempted to repay any portion of these purported loans. Wife's testimony that she was unaware of any of these debts and only discovered their existence after she filed for divorce is additional evidence these debts were not incurred for the joint benefit of Husband and Wife. *See Hickum,* 320 S.C. at 103, 463 S.E.2d at 324 (stating that if the family court finds that a spouse's debt was not made for marital purposes, it need not be factored into the court's equitable apportionment of the marital estate, and the family court may order payment by the spouse who created the debt for nonmarital purposes). Accordingly, we conclude the family court did not err in excluding these debts from the marital estate.

## II. Wife's Cross–Appeal

On cross-appeal, Wife contends the family court erred in finding Husband's overpayment of temporary alimony negated his requirement to pay Wife attorney's fees and costs. We agree.

In light of our holding that the family court properly awarded Wife temporary alimony, we necessarily reverse the family court's finding that this excess alimony adequately reimbursed Wife for her attorney's fees. In the family court's final order, it held Husband was required to pay "most" of the

fees incurred by Wife. However, the family court then essentially held Husband was responsible for all of Wife's attorney's fees by crediting him the entire remainder of Wife's fees. Because of this discrepancy in the family court's order in addition to the lack of specific findings to support its decision, we remand the issue of attorney's fees to the family court. *Holcombe v. Hardee*, 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991) ("[W]hen an [o]rder is issued in violation of Rule 26(a), this Court may remand the matter to the trial court or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence."). On remand, the family court should set forth the specific findings of fact as to each of the six factors from *Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E.2d 313 (1991), in determining the amount of attorney's fees to award Wife.

## CONCLUSION

Based on the foregoing, the family court's order is

**AFFIRMED IN PART, REVERSED IN PART, and RE-MANDED.**

GEATHERS and LOCKEMY, JJ., concur.