486 S.E.2d 516

**Janette T. SMITH, Respondent/Appellant,**

v.

**James Ray SMITH, Appellant/Respondent.**

**No. 2686.**

Court of Appeals of South Carolina.

Heard June 3, 1997.
Decided June 16, 1997.
Rehearing Denied Aug. 28, 1997.

William N. Epps, Jr., of Epps, Nicholson & Stathakis, Anderson, for Appellant/Respondent.

M. Scott McElhannon, Anderson, Guardian ad Litem for Appellant/Respondent.

Adam Fisher, Jr., and Gwendolynn W. Barrett, The Fisher Law Firm, Greenville, for Respondent/Appellant.

ANDERSON, Judge.

The family court granted Janette T. Smith (Wife) a divorce from James Ray Smith (Husband) on the ground of adultery. Both parties appeal the provisions of the family court order which equitably distributed the marital property and awarded Wife alimony and attorney's fees. We affirm in part, reverse in part, and remand.

### FACTS/PROCEDURAL BACKGROUND

The Smiths were married on December 22, 1962. They have three children, all of whom are over the age of 18. Wife has a G.E.D. and Husband graduated from high school. Wife is under medication for hypertension and takes estrogen for a hormonal imbalance. Husband has suffered from heart problems for several years. He was declared disabled by the Social Security Administration in 1994 due to his heart condition.

Wife cooked, cleaned, and took care of the children during the marriage; she also did much of the yard work. Husband initially worked for a construction business. Several years after they were married, Husband established a side business, Suzuki of Anderson, which eventually became his full-time occupation. After staying home to raise the parties' three children for approximately eight years, Wife worked part-time

for Suzuki for fourteen years beginning in 1975. However, she never earned more than minimum wage. Husband paid most of the bills and earned approximately eight times Wife's salary during this period.

Wife observed a close relationship between Husband and his former employee, Linda Roach, throughout almost the entire marriage. Husband left Wife in 1989, and several weeks later Wife gave up her part-time position at Suzuki. Wife eventually found employment with the Anderson Area Medical Center, where she earned $7.46 an hour.

Wife filed this action for divorce on the ground of adultery in 1990. A *pendente lite* order issued in 1990 ordered Husband to pay Wife a lump sum of $2,000.00 in temporary financial assistance and $500.00 for attorney's fees. In 1992, the family court ordered Husband to pay Wife $5,000.00 "as an advance against the share of equitable distribution to which [Wife] would otherwise be entitled as a result of the final hearing." The judge stated he was making this award because, although several final hearings had been scheduled, they had been cancelled due to Husband's poor health. In 1993, another *pendente lite* order directed Husband to utilize several joint accounts, which contained a total of $4,367.00, to pay Wife $1,000.00 per month in temporary support and $500.00 in temporary attorney's fees.

A final hearing was held in June of 1995. At that time, Wife was 55 and Husband was 62. Husband was unable to attend due to his heart condition, but he was represented by legal counsel and a guardian *ad litem*. In a bifurcated proceeding, the family court judge issued Wife a decree of divorce on the ground of adultery by order dated July 26, 1995. Further, "due to the inordinate period of time which has passed from the commencement date of this marital litigation," the judge ordered Husband to make an immediate cash payment of $10,000.00 to Wife as a partial distribution of the marital assets. The judge stated he would "specifically take into account, and give appropriate credit for, this distribution of funds in any subsequent allocation of marital assets."

In a final order dated November 2, 1995, the family court judge awarded Husband 68% and Wife 32% of the marital assets in the equitable distribution of the parties' property.

The judge found the marital estate was worth $772,393.00. The judge noted he was deducting the $10,000.00 advance from Wife's share of the distribution. Further, the judge ordered Husband to pay Wife permanent, periodic alimony of $550.00 per month; $17,000.00 in attorney's fees; and $4,505.00 in expert witness fees, as well as several other costs related to the proceeding. Husband was ordered to pay the costs for his guardian *ad litem* and his physician.

Upon motions for reconsideration filed by both parties, the judge revised one paragraph of the order to reflect that Husband had not attended the final hearing due to his medical condition. In addition, the judge amended the order to give Husband a credit of $500.00 towards attorney's fees that he had paid to Wife pursuant to a prior order. The judge denied reconsideration on all other matters. Husband and Wife have both appealed, challenging numerous issues related to the equitable distribution and to Wife's award of alimony and attorney's fees.

## STANDARD OF REVIEW

In appeals from the family court, the Court of Appeals has the authority to find the facts in accordance with its own view of the preponderance of the evidence. *Rutherford v. Rutherford,* 307 S.C. 199, 414 S.E.2d 157 (1992); *Owens v. Owens,* 320 S.C. 543, 466 S.E.2d 373 (Ct.App.1996). This broad scope of review does not, however, require this court to disregard the findings of the family court. *Stevenson v. Stevenson,* 276 S.C. 475, 279 S.E.2d 616 (1981). Neither are we required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson,* 276 S.C. 524, 280 S.E.2d 541 (1981).

## LAW/ANALYSIS

### I. EQUITABLE APPORTIONMENT

Husband and Wife raise numerous issues regarding the judge's equitable distribution of the marital property as follows.

A. Valuation of Marital Home and Country Squire Apartments

■ Husband first contends the family court judge erred in valuing the marital home at $70,000.00. He states a 1991 appraisal by Ken Walker valued the residence at $90,000.00, and there is no evidence in the record to support the judge's finding that the home is worth only $70,000.00. Wife states she did not agree with Walker's appraisal because the home needed several repairs. Wife valued the marital home at $70,000.00 on her marital assets addendum, and she states this figure is very close to the tax value of $70,670.00 shown on the tax records submitted to the family court.

The judge noted in his order that he was valuing the home at $70,000.00 per Wife's evaluation. We find there was evidence in the record to support the judge's valuation of the marital home based on Wife's estimate, and we affirm the judge's finding. *See South Carolina State Highway Dep't v. Wilson,* 254 S.C. 360, 175 S.E.2d 391 (1970) (a landowner, who is familiar with the property and its value, is allowed to give his or her estimate as to the value of the land); *Woodward v. Woodward,* 294 S.C. 210, 363 S.E.2d 413 (Ct.App.1987) (the family court's valuation of property will be affirmed if it is within the range of the evidence); *Smith v. Smith,* 294 S.C. 194, 363 S.E.2d 404 (Ct.App.1987) (the family court may accept one party's valuations of marital property over those of the other party).

■ Secondly, Husband contends the family court judge erred in failing to use Walker's appraised value of $139,500.00 for the Country Squire Apartments, an investment property. Husband asserts he owns a one-third interest in the complex, which would be worth $46,500.00. Wife argues, as she testified at trial, that the apartments were worth $272,250.00 according to the tax records, less a lien which left the equity at $237,420.00; she further testified that Husband owned a one-third interest in the complex when this action was filed, but now owns a one-half interest, making his share worth over $118,000.00. The judge found the apartments were worth $209,623.00 according to a tax assessment, and Husband's one-third interest was worth $69,874.00.

Marital property consists of all property owned by the parties *as of the date of filing* of marital litigation. S.C.Code Ann. § 20–7–473 (Supp.1996); *Panhorst v. Panhorst,* 301 S.C. 100, 390 S.E.2d 376 (Ct.App.1990). We find no abuse of discretion in the judge's use of the tax value for the property, and the determination of Husband's value based on the one-third interest he had at the time this action was filed. *See Roe v. Roe,* 311 S.C. 471, 429 S.E.2d 830 (Ct.App.1993) (the family court is given broad discretion in valuing the marital property, and this court will affirm a finding as to value which is supported by the evidence).

## B. Vehicles

In the final order, the family court judge found that Husband had personal possession of four vehicles (and determined their corresponding values) as follows: a 1989 Toyota Cressida ($25,000.00), a 1987 Ford F–350 ($7,900.00), a 1979 Chevrolet van ($1,000.00), and a GMC truck ($5,000.00), for a total value of $38,900.00.

■ Husband alleges the judge erred in finding these vehicles were Husband's personal property because the vehicles are owned by his corporation, Suzuki of Anderson, and they were included in the evaluation of the business. He asserts that Dr. Charles Alford, a financial expert who valued the Suzuki corporation, included the value of the vehicles in his valuation of the business and that they are shown on the corporation's depreciation schedule. Husband contends the judge essentially credited the vehicles to him twice, which was an abuse of discretion.

Wife notes her marital assets addendum shows four *other* vehicles that she included in the value of the Suzuki of Anderson business: a Nissan 380ZX, a van, a beige Dodge Dakota, and a 1992 white Dodge Dakota with a grey stripe. She states that she did not list a value for these vehicles and that she testified at the final hearing that these vehicles belonged to the business. In contrast, she listed the four disputed vehicles, the 1989 Toyota Cressida, 1987 Ford F–350, 1979 Chevrolet van, and GMC truck on her marital assets addendum and testified at the hearing that these four vehicles

were purchased during the marriage and taken by Husband when the parties separated.

Wife correctly notes that nowhere in the testimony cited by Husband does Dr. Alford state that he has included the disputed vehicles in the valuation of the business. As for the depreciation schedule cited by Husband, Wife notes it lists a Chevrolet van, a Toyota, two Ford trucks, and two Dodge trucks, but it does not otherwise specify the vehicles. Wife argues it is impossible to tell whether any of these are the same vehicles. Wife asserts the family court judge properly found in his discretion that the four vehicles in question were marital property in the possession of Husband, and that the judge apparently found her evidence more credible.

Although Husband did testify that Suzuki of Anderson had a 1989 Toyota and a GMC truck, we find the conflicting evidence was a matter for the family court judge to evaluate in his discretion and we affirm the judge's determination on this matter. *Brandi v. Brandi*, 302 S.C. 353, 396 S.E.2d 124 (Ct.App.1990) (the apportionment of the marital estate is within the sound discretion of the family court); *Sealy v. Sealy*, 295 S.C. 281, 368 S.E.2d 85 (Ct.App.1988) (where the evidence is disputed, we may adhere to the findings of the trial judge, who saw and heard the witnesses and was in a superior position to judge their credibility).

## C. Marital Debt

The family court judge determined Wife should be responsible for debts totalling $4,687.21 that she had listed on her financial declaration. The judge apportioned the following debts to Husband that were identified in Husband's financial declaration:

| | |
|---|---|
| Heritage Federal | $ 2,443.80 |
| BB & T (Southern National) | 43,796.49 |
| Security Pacific | 2,998.20 |
| TOTAL | $49,238.49 |

■ Husband first alleges the order contains a typographical error because the Security Pacific debt is listed as $12,998.20, not $2,998.20, in his financial declaration. Secondly, Husband alleges the court erred in failing to deduct the total marital debt (both his and Wife's) from the gross value of the

marital estate. Wife agrees that the order contains a typographical error in that the Security Pacific debt should be $12,998.20. However, she further contends that all of Husband's debts were incurred by him after their separation; therefore, they are not marital debts and should not be deducted from the marital estate.

We agree that the judge should correct the Security Pacific debt to be $12,998.20, as shown on Husband's financial declaration; therefore, Husband's total debts should be revised to $59,238.49. As for the handling of the marital debt, S.C.Code Ann. § 20–7–472(13) (Supp.1996) provides that marital debt is a factor to be considered in making the equitable apportionment. In *Frank v. Frank*, 311 S.C. 454, 458, 429 S.E.2d 823, 826 (Ct.App.1993), this Court stated, "We hold that the statute [§ 20–7–472] implicitly requires that marital debt, like marital property, be specifically identified and apportioned in the equitable distribution." *See also O'Neill v. O'Neill*, 293 S.C. 112, 359 S.E.2d 68 (Ct.App.1987) (upholding family court judge's apportionment of debt by requiring each spouse to pay the debts listed on his or her financial declaration).

We find the judge correctly considered the marital debt in this instance by specifically identifying the individual items of debt and apportioning them in the equitable distribution. None of the debts was identified as a lien or a mortgage on any particular item of marital property. Accordingly, it was not necessary for the judge to deduct this amount from the value of the unrelated marital assets, which had already been apportioned. *See Hardy v. Hardy*, 311 S.C. 433, 437, 429 S.E.2d 811, 813–14 (Ct.App.1993) (the estate to be equitably divided by the family court judge is the net estate, *i.e.,* provision for the payment of marital debts must be apportioned as well as the property itself; basically the same rules of fairness and equity which apply to the equitable division of marital property also apply to the division of marital debts). The apportionment of the debts is therefore affirmed. We need not address Wife's assertion that Husband's debts were non-marital since the issue was not raised before the trial judge.

D. Loans of $123,689.07

Husband next asserts the court erred in failing to consider $123,689.07 in "share loans" that he states constituted

"valid marital debt" that he used "to put into the Suzuki business, and into the marriage."

The share loans were discussed by Mr. Aaron King, senior vice president of Heritage Federal Savings & Loan, and the judge noted in his findings under the captions "Assets" and "IRAs, Cash, etc.," that "[a]ll accounts which remain with cash are part of the roll-over of the $123,000+ which [Husband] withdrew or borrowed vs. w/Sh. Loans."

Husband has not shown where this allegation was timely raised to the trial judge, and we find no assertion in Husband's Rule 59(e), SCRCP motion that Husband should have been credited with $123,689.07. Accordingly, we need not address this issue. *Hamby v. Hamby,* 315 S.C. 518, 445 S.E.2d 656 (Ct.App.1994) (issue must be raised to and ruled on by trial court to be preserved for review).

E. Husband's Activities During the Pendency of the Divorce Proceedings

In the final order, the family court judge made the following findings regarding Husband's actions to better his circumstances during the five years the marital litigation was pending:

It is clear that from the testimony and the action of [Husband] that he had contemplated separation from [Wife] extensively and in advance of the actual date and, in fact, prepared for same, attempting to better his circumstances. He opened and closed accounts, transferred money, deleted [W]ife's name from accounts and took multiple dramatic steps to prepare himself for the separation. Such actions by [Husband] continued throughout the separation and during the approximate[ly] five years pending the actual trial of this case. [Husband] engineered and took substantial steps to make the tracking of marital assets difficult.

Husband argues the family court judge erred in considering this alleged conduct because the allegation was unfounded and he had complied with all court orders during the pendency of the litigation. Husband asserts he did not secrete funds and that there was no evidence he made the tracking of marital assets difficult or that he purposely delayed the proceedings.

Much deference is given on appeal to the trial judge's decisions regarding the weight of the evidence and the credibility of the witnesses. *Rabon v. Rabon,* 289 S.C. 49, 344 S.E.2d 615 (Ct.App.1986). Although we may find facts in accordance with our own view of the preponderance of the evidence, we are nevertheless inclined to give proper consideration to the fact that the trial judge saw the witnesses, heard the testimony of the witnesses delivered from the stand, and had the benefit of personal observation and contact with the witnesses. *Id.*

We defer to the trial judge's findings in this regard. There was testimony presented that Husband opened and closed accounts, transferred money, deleted Wife's name from accounts and took multiple steps to prepare for the separation and divorce. Husband was able to use the vast majority of the marital assets and accounts during the pendency of this action while Wife had very little funds of her own. Accordingly, we find no error.

F. Wife's Circumstances During the Pendency of the Divorce Proceedings

■ Husband also contends the family court judge erred in finding he should compensate Wife because she allegedly lived in marginal circumstances compared to Husband during the pendency of the marital litigation, and further, that Wife had been relegated to a diminished lifestyle. He also asserts the judge considered the value of the assets in Wife's asset listing to the exclusion of Husband's evidence and asset listing.

The family court judge found in pertinent part that "Husband has been able to enjoy a greatly enhanced and above middle class lifestyle throughout the pendency of this action while [W]ife has been relegated, because of the financial purse strings being controlled by [H]usband, to a diminished existence and lifestyle during the approximate[ly] five years pending this action. [Wife's] witness Aaron King testified at great length about the accounts that [Husband] closed and the funds, in excess of $120,000, that [Husband] solely controlled and received.... The Court finds Mr. King credible and clearly corroborated [Wife's] position that [Husband] maneu-

vered marital funds for his own purposes but [sic] designed to cut [Wife] out of such funds."

The judge also stated he was "called upon to consider compensating [W]ife for the five years she has lived in marginal circumstances ... and to consider the value of assets ... as set out on [Wife's] marital assets addendum ... which is far more detailed and with more specificity and explanation than the marital assets addendum presented by" Husband.

We find no error in the judge's determination. King testified extensively as to the account activities of Husband during the pendency of the marital litigation. Further, Wife testified that her circumstances were "drastically different" from her lifestyle during the marriage. One of the parties' sons testified that, since the separation, Husband "spends money more extravagantly tha[n] he ever did," and that he had been taking trips, going shopping, etc. As for the valuation of the assets, it was in the judge's discretion to evaluate the credibility and/or utility of the parties' respective asset listings, and we find no error in this regard. *Woodward v. Woodward, supra* (the family court's valuation of property will be affirmed if it is within the range of the evidence); *Sealy v. Sealy, supra* (where the evidence is disputed, we may adhere to the findings of the trial judge, who saw and heard the witnesses and was in a superior position to judge their credibility).

## G. Overall Apportionment of the Marital Estate

 Wife argues the family court judge erred in awarding her only 32% of the marital assets and that the marital estate should be apportioned 50% to each party. We agree.

The equitable apportionment statute, S.C.Code Ann. § 20–7–472 (Supp.1996), enumerates the factors that must be considered by the family court judge in determining the appropriate division of marital assets. These include, *inter alia,* the duration of the marriage, marital misconduct by either spouse, the health of each spouse, the income of each spouse, and the contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker. Under § 20–7–473, marital property is defined as all real and personal property acquired by the parties during the

marriage which is owned as of the date of filing or commencement of marital litigation, regardless of how legal title is held.

Even if the judge fails to specifically address each of the factors set forth in the apportionment statute, the award will be upheld if it can be determined that the judge addressed the factors with sufficiency for an appellate court to conclude the judge was cognizant of the required factors in that particular case. *Walker v. Walker*, 295 S.C. 286, 368 S.E.2d 89 (Ct.App. 1988).

The family court judge found the assets of the parties totalled $772,393.00, from which Husband was to receive 68% and Wife 32%. Upon reviewing the record, in our own view of the preponderance of the evidence, we find a 50/50 distribution of the marital assets to be appropriate in this case. Most significant of the factors for this decision are the duration of the parties' marriage, Husband's greater earning capacity, Wife's indirect contributions to the marriage, and Husband's fault in the breakup of the marriage. Accordingly, we remand to the family court to effect a 50/50 apportionment of the marital assets.

## II. CREDIT FOR AMOUNTS PREVIOUSLY PAID BY HUSBAND

Husband asserts he is entitled to credits for several amounts he has previously paid to Wife. First, he argues the family court judge erred in failing to give him a credit for the $5,000.00 cash advance he paid to Wife pursuant to a 1992 *pendente lite* order. He states this amount should have been included as part of Wife's share in the equitable distribution. Secondly, Husband contends the judge erred in failing to give him a credit for payments of $1,000.00 per month paid from the date of a 1993 temporary order until the final order was issued in 1995. He asserts the 1993 temporary order only required him to pay Wife $1,000.00 per month and attorney's fees of $500.00 out of the identified funds in several joint accounts which totalled $4,367.00. He states that once these funds were exhausted, he voluntarily continued to pay Wife $1,000.00 per month until the date of the final order in 1995. Husband asserts he is therefore entitled to a credit of $23,-000.00 for these payments in the equitable distribution.

Wife argues that, although the family court judge did not specifically credit Husband for the $5,000.00 cash advance, the judge "was advised of the situation and considered it in the overall apportionment of the marital estate." As for the payments of $1,000.00 per month, Wife contends Husband is not entitled to a credit for these payments, especially if the payments are deemed voluntary.

We find, in our own view of the preponderance of the evidence, that Husband is entitled to a credit of $5,000.00 in the equitable apportionment of the marital assets. This represents the cash advance made by Husband pursuant to the family court's order of January 23, 1992. That order specifically provided that the $5,000.00 "shall be considered as an advance against the share of equitable distribution to which [Wife] would otherwise be entitled as a result of the final hearing." We remand this issue to the family court so that it may credit Husband with this $5,000.00 cash advance when it recalculates the distribution of marital assets so as to effect the 50/50 apportionment ordered above. We find Husband is not entitled to a credit for the remaining payments of temporary support.

## III. ALIMONY

Husband next argues that the family court judge's award to Wife of $550.00 per month in alimony should be reversed, asserting Wife is 7 years younger and employed full-time, whereas his medical problems have left him unable to earn a substantial living. Wife also appeals, asserting the alimony award is too low based on the parties' overall financial status, Wife's need for alimony, Husband's ability to pay, and Husband's fault in the breakup of the marriage.

South Carolina law provides that the family court judge may grant alimony in such amounts and for such term as the judge considers appropriate under the circumstances. S.C.Code Ann. § 20–3–130(A) (Supp.1996). Twelve factors must be considered in deciding whether to make an award of alimony, including the employment history and earning potential of each spouse; the current and reasonably anticipated earnings of both spouses; the marital and nonmarital properties of the parties, including those apportioned to him or her in the

divorce action; the standard of living established during the marriage, and such other factors as the judge considers relevant. S.C.Code Ann. § 20–3–130(C) (Supp.1996). Fault is an appropriate factor for consideration in determining alimony in cases where the misconduct affected the economic circumstances of the parties or contributed to the breakup of the marriage. S.C.Code Ann. § 20–3–130(C)(10) (Supp.1996).

We find no abuse of discretion in the family court's award to Wife of $550.00 per month alimony. We reject Husband's assertion that he is unable to pay this amount to Wife, and in light of our remand to effect a 50/50 distribution of the marital estate, we likewise reject Wife's argument that the award will be insufficient. It is clear from the judge's order that he carefully considered all of the relevant factors, the most important being, in our view, the long duration of the marriage, Wife's limited earning potential, and Husband's fault in the breakup of the marriage. Accordingly, we affirm the judge's award of alimony.

## IV. ATTORNEY'S FEES

The family court judge awarded Wife attorney's fees of $17,000.00, less a credit of $500.00 for attorney's fees previously paid by Husband. In addition, the judge ordered Husband to pay expert witness fees of $4,505.00 for Dr. Charles Alford, who was called to evaluate Wife's need for alimony, the tax consequences to the parties, and the valuation of the parties' business. Further, the judge ordered Husband to pay all of the costs for his guardian *ad litem* and for his physician, Dr. Graham Parker. Finally, Husband was ordered to pay any costs Wife incurred from Heritage Federal for witness fees, document preparation, and copies.

Husband contends the family court's award to Wife of attorney's fees and witness fees, as well as requiring him to assume sole responsibility for the other fees designated above was excessive. Wife argues that Husband should pay not only the amount awarded, but all of her fees since he had the financial ability to do so. Wife asserts that she incurred fees totalling $30,407.35 for the costs of an attorney, private investigator, and an expert, as well as costs. She asks this Court to

modify the family court judge's award and allow her an award of $30,407.35.

Under S.C.Code Ann. § 20–3–130(H) (Supp.1996), the judge may order one party to pay a reasonable amount to the other for attorney's fees and costs incurred in maintaining an action for divorce. An award of attorney's fees is within the discretion of the family court and should not be disturbed on appeal absent an abuse of discretion. *Nienow v. Nienow,* 268 S.C. 161, 232 S.E.2d 504 (1977); *Cannon v. Cannon,* 321 S.C. 44, 467 S.E.2d 132 (Ct.App.1996). We find sufficient evidentiary support in the record to uphold the judge's award of attorney's fees, as well as the various costs assigned to the parties as noted above. Accordingly, we conclude the court did not abuse its discretion in this instance. *See Glasscock v. Glasscock,* 304 S.C. 158, 403 S.E.2d 313 (1991) (family court should consider the nature, extent, and difficulty of the case; time necessarily devoted to the case; professional standing of counsel; contingency of compensation; beneficial results obtained; and customary legal fees for similar services); *Robinson v. Tyson,* 319 S.C. 360, 461 S.E.2d 397 (Ct.App.1995) (no abuse of discretion in ordering payment of attorney's fees where record contains sufficient evidentiary support for the award).

## *CONCLUSION*

We reverse so much of the family court order which gave Husband 68% and Wife 32% of the marital assets, and remand to the family court to make a 50/50 distribution of the marital assets. Further, in making the distribution, we direct the court to allow Husband a credit of $5,000.00 for the advance against Wife's share of the marital estate that Husband made in accordance with the *pendente lite* order of January 23, 1992, and to correct the typographical error listing the debt for Security Pacific. We affirm in full all of the remaining provisions of the family court order as pertains to the award of alimony and attorney's fees and other expenses.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HOWELL, C.J., and GOOLSBY, J., concur.