789 S.E.2d 51

**Peggy D. CONITS, Respondent,**

v.

**Spiro E. CONITS, Appellant.**

Appellate Case No. 2014–000941.
No. 5391.

Court of Appeals of South Carolina.

Heard Dec. 8, 2015.
Decided March 16, 2016.
Rehearing Denied Aug. 18, 2016.

David Alan Wilson, of The Law Offices of David A. Wilson, LLC, and Kenneth C. Porter, of Porter & Rosenfeld, both of Greenville, for appellant.

Timothy E. Madden and Miles Edward Coleman, both of Nelson Mullins Riley & Scarborough, LLP, of Greenville, for respondent.

SHORT, J.

In this family court action between Peggy D. Conits (Wife) and Spiro E. Conits (Husband), Husband appeals the final order, arguing the court erred in (1) including a nonexistent asset in the marital estate; (2) finding Husband's note payable to his brother was nonmarital property; (3) finding certain property was transmuted into marital property; (4) finding property encumbered by mortgages during the marriage was marital property; (5) apportioning the marital estate; (6) exercising jurisdiction over nonmarital property; and (7) awarding Wife attorney's fees. We affirm.

**FACTS**

Wife and Husband were married in Sparta, Greece, on November 3, 1985. At the time, Husband was thirty-three

years old and Wife was twenty-one years old and studying music. Wife explained the parties intended to move to the United States, where they would work for Husband's restaurant, Carolina Fine Foods, and raise a family. At the time, Carolina Fine Foods was located at 633 S.E. Main Street in Simpsonville, South Carolina. The parties moved to Greenville in February 1986. Wife testified Husband owned four restaurants during the marriage, some of which were owned with Husband's brother.

Wife testified the parties had three children, all of whom were educated in private schools and were over eighteen years old at the time of the final hearing. Wife explained she had never held a paying job, although she worked without pay as needed at the family restaurants. Wife also explained she had no outside income and was a traditional stay-at-home mom throughout the marriage.

Wife testified Husband owned property on Hawkins Road in Traveler's Rest at the time they were married. The property was mortgaged at the time, and throughout the marriage, numerous loans mortgaged by the property were taken and paid off. Wife testified a similar pattern happened with some of the parties' other properties. As to the property at 633 S.E. Main Street, Simpsonville, Wife testified Husband already owned and worked at the property at the time of their marriage. She testified it was mortgaged when they married, the parties paid the loan during the marriage, and the parties executed mortgages and paid other loans on the property. According to Wife, the parties also paid off a mortgage on a mountain house in Greece. Wife testified to the value of other assets, such as the historical house in Greece, and testified the parties' properties were used for loans, which were taken and paid off throughout the marriage. Husband testified he purchased the historical house prior to the marriage and financed it.

Husband's father, Elias Conits (Father), testified in his deposition that he received 1,000 Euros a month from a pension, and over the years, he had given Husband and Husband's brother each 400,000 Euros. He also testified his gifts were derived from his olive and orange tree production. Father admitted Husband had money in Greece that he did

not take to America. Husband admitted he always had "a little money over there."

Husband testified he moved to the United States in 1968. He originally worked for his uncle at a restaurant and went to high school and then a technical college. Shortly thereafter, he and a cousin leased property and opened a liquor store. In 1970 or 1971, Husband began his restaurant business in Greenville with the purchase of Carolina Fine Foods Restaurant, Augusta Road. He later purchased the land on which the restaurant sat, sold the business, and leased the real estate to a new restaurant owner. With the proceeds from the sale of the business, Husband purchased another business in Traveler's Rest, which he later sold, keeping the real estate. Husband repeated this process multiple times until, at the time of the divorce, he owned eighteen properties in the upstate, including several that housed Carolina Fine Foods. Many of the properties were jointly owned by Husband and his brother. Husband also testified to the numerous purchases and financing transactions, explaining at trial that "when [he bought] something [he didn't] want to sell it." Finally, Husband admitted the money used to support the family throughout the marriage came from the restaurants and the parties' rental properties. He also conceded the money in the Greek bank account was used in support of the marriage.

Husband testified the value of the marital home was $395,000, although his loan application to the bank in September 2011 listed a market value of $500,000. Husband admitted he omitted Carolina Fine Foods, LLC, the bank account in Greece, and the Bank of Traveler's Rest bank account from his 2009 financial declaration.

Wife filed this divorce action in August 2009, seeking, *inter alia*, equitable apportionment, attorney's fees, and temporary support. A two-day trial was held June 25 and 26, 2012. On July 25, 2012, George Conits (the brother), Husband's brother who resides in Greece, filed a complaint in the Greenville County Court of Common Pleas, seeking a declaratory judgment and constructive trust regarding vacant land on Highway 14, which Wife claimed was marital property. Attached to the complaint was the deed to the property, which indicated

Husband was the sole owner. The brother also filed a motion to dismiss in family court as to the Highway 14 property.

In its August 14, 2012 order, the family court granted Wife a divorce and ordered 84.07 acres in Laurens to be sold. By order dated March 11, 2013, the family court denied the brother's motion to dismiss. The brother filed a motion to reconsider. In an order filed October 11, 2013, the family court equitably distributed the parties' marital estate. The parties each moved for reconsideration. The court issued a final amended order, filed April 14, 2014, denying Husband and the brother's motions to reconsider.

The court valued the marital estate at $5.9 million and awarded 50 percent (or $2.972 million) to each party.[1] The court identified and valued numerous properties, including the following properties in dispute on appeal: family farm in Greece; 25 Hawkins Road; 633 S.E. Main Street; historical house and four-story building in Greece; and vacant land on Highway 14, Spartanburg County. The court also ordered Husband to pay Wife's attorney's fees and costs. This appeal followed.

## STANDARD OF REVIEW

On appeal from the family court, this court reviews factual and legal issues de novo. *Moore v. Moore,* 414 S.C. 490, 497, 779 S.E.2d 533, 536 (2015). "[T]his broad standard of review does not require the appellate court to disregard the factual findings of the trial court or ignore the fact that the trial court is in the better position to assess the credibility of the witnesses." *DiMarco v. DiMarco,* 399 S.C. 295, 299, 731 S.E.2d 617, 619 (Ct.App.2012) (citing *Pinckney v. Warren,* 344 S.C. 382, 387, 544 S.E.2d 620, 623 (2001)). An appellate court will affirm the decision of the family court unless the decision is controlled by an error of law or the appellant satisfies the burden of showing the preponderance of the evidence actually supports contrary factual findings by the appellate court. *Id.*

---

1. The parties stipulated to ownership of two vehicles by the children, marital assets of approximately $290,000, and a nonmarital asset owned by Husband. All other assets were disputed, either as to whether they were marital or as to their values.

## LAW/ANALYSIS

### I. Nonexistent Asset

■ Husband argues the family court erred in finding a family farm in Greece was marital property because the asset does not exist. We find Husband failed to preserve this issue for appellate review.

Husband listed a one-third interest in a nonmarital, thirty-acre property on his financial declaration dated September 14, 2009, and valued his interest at $20,000. On his November 2010 declaration, Husband omitted the property. On Husband's financial declaration presented at trial, Husband disclosed a fifty percent interest in a three-acre orange farm as a marital asset and valued his interest at $21,875. During trial, he testified the property was three acres, valued at between $35,000 and $40,000, and conceded it was a marital asset. On Wife's 2012 financial declaration, she listed a thirty-acre farm, valued at $1.4 million. The court found, "Throughout this case, Husband made different and contradictory representations [regarding] . . . the acreage of the farm, his percentage ownership in the farm, and the value of his interest." The court found, "[b]ased on the credibility of the competing testimony, the family farm i[n] Greece is a marital asset subject to equitable division and assigned a value of $1,420,000." On appeal, Husband argues he does not own a thirty-acre family farm in Greece and Wife failed to meet her burden of proving the existence of such a farm as part of the marital estate.

■ A party may not raise an issue in a motion to reconsider, alter or amend a judgment that could have been presented prior to the judgment. *Kiawah Prop. Owners Grp. v. Pub. Serv. Comm'n of S.C.,* 359 S.C. 105, 113, 597 S.E.2d 145, 149 (2004). At trial, Husband made no arguments as to the existence of the family farm or that Wife "made up" the farm. Rather, the parties argued about its value and whether the property was three or thirty acres. Thus, Husband is precluded from raising this issue on appeal. *See id.* at 113, 597 S.E.2d at 149 (finding the issue was not preserved because a party may not raise an issue in a motion to reconsider, alter, or amend a judgment that could have been presented prior to the judgment); *McClurg v. Deaton,* 380 S.C. 563, 576–80, 671

S.E.2d 87, 94–96 (Ct.App.2008), *aff'd*, 395 S.C. 85, 716 S.E.2d 887 (2011) (addressing two grounds for setting aside a default judgment but finding a third ground not preserved for appellate review because it was raised for the first time in a motion to reconsider).

## II. Note Payable

█ Husband argues the family court erred in finding a note payable to his brother was not a marital debt. We disagree.

Husband listed a $235,000 note payable to his brother on his list of marital debts. At trial, he testified that when he and his brother opened the Carolina Fine Foods in Simpsonville, he had a family and was short on cash; thus, his brother "put some extra" money on the equipment for the restaurant and to purchase the lot next door with an agreement Husband would "pay him later."

When asked about the alleged $235,000 note payable to Husband's brother, Wife testified she had seen a note, but she did not know anything else about it. John Henry Heckman, III, an attorney in Greenville, testified he prepared the note in May 2004. The terms of the note indicated the full amount would be paid on or before June 1, 2014; provided zero interest; and stated pre-payments could be made without penalty at any time. Heckman admitted he did not witness any money change hands between Husband and the brother, and he did not remember if the brother was present at the execution of the note. The family court concluded, "Based on the lack of credible evidence presented, the alleged debt owned by Husband to [the brother] is not recognized as a marital debt subject to equitable apportionment."

█ "Marital debt, like marital property, must be specifically identified and apportioned in equitable distribution." *Wooten v. Wooten*, 364 S.C. 532, 546, 615 S.E.2d 98, 105 (2005) (citing *Smith v. Smith*, 327 S.C. 448, 457, 486 S.E.2d 516, 520 (Ct.App.1997)). There is a rebuttable presumption that a debt incurred prior to marital litigation is marital in nature and must be considered in equitably apportioning the marital estate. *Id.* "For purposes of equitable distribution, 'marital debt' is debt incurred for the joint benefit of the parties

regardless of whether the parties are legally jointly liable for the debt or whether one party is legally individually liable." *Hardy v. Hardy*, 311 S.C. 433, 436–37, 429 S.E.2d 811, 813 (Ct.App.1993). "[B]asically the same rules of fairness and equity [that] apply to the equitable division of marital property also apply to the division of marital debts." *Id.* at 437, 429 S.E.2d at 814.

In *Pruitt v. Pruitt*, 389 S.C. 250, 267, 697 S.E.2d 702, 711 (Ct.App.2010), this court deferred to the family court's finding that alleged debts listed by the husband as marital debts did not qualify as marital debts because they were not adequately explained by his testimony at trial. Although the appellate court views the evidence de novo, it defers to the family court's findings of fact due to "the superior position of the [family court] to determine credibility and the appellant's burden to satisfy the appellate court that the preponderance of the evidence is against the finding of the [family] court." *Lewis v. Lewis*, 392 S.C. 381, 388, 709 S.E.2d 650, 653 (2011). Deferring to the family court's superior position to determine credibility, we find no error in the finding that the alleged debt was not a marital debt. *See Grumbos v. Grumbos*, 393 S.C. 33, 46–47, 710 S.E.2d 76, 83–84 (Ct.App.2011) (affirming the family court's refusal to find a husband's familial and other debts were marital after considering the intra-family nature of the debts and the lack of credible documentation and testimony to substantiate the debts); *Allen v. Allen*, 287 S.C. 501, 507, 339 S.E.2d 872, 876 (Ct.App.1986) (finding loans from close family members must be closely scrutinized for legitimacy).

## III. Transmutation[2]

Husband argues the family court erred in finding various properties were transmuted into marital property. We disagree.

### A. 25 Hawkins Street and 633 S.E. Main Street

Husband argues the family court erred in finding property located at 25 Hawkins Street in Travelers Rest and

---

2. We combine Husband's third and fourth issues on appeal.

633 S.E. Main Street in Simpsonville transmuted into marital property. He argues the family court erred because his use of income to support the marriage did not transmute the properties into marital properties. We disagree.

Husband purchased the 25 Hawkins Street property prior to the marriage. He later refinanced it several times during the marriage to obtain funds that were used to pay various family expenses, including private school tuition for the children and new marital properties. Husband testified he also owned the property at 633 S.E. Main Street prior to the marriage and acknowledged it was used during the marriage to obtain a loan "for whatever [he] needed money for at the time."

The court found 25 Hawkins Road was a marital asset, finding although Husband owned the property prior to the marriage, Wife met the burden of proving the asset was transmuted into marital property because the parties extinguished all of the debt owed against the property at the time of the marriage from income earned during the marriage. Furthermore, the parties refinanced the property numerous times during the marriage to support the marriage. As to the 633 S.E. Main Street property, the court found that during the marriage, the parties extinguished the premarital debt. The court found Husband did not trace the income used to extinguish the debt to nonmarital sources and the parties refinanced the property several times throughout the marriage, using the proceeds in support of the marriage. Thus, the court found the property was a marital asset.

**B. Historical House and Four–Story Building in Greece**

 Husband also argues the family court erred in finding the historical house and the four-story building in Greece transmuted into marital property.

The historical house is located in Sparta, Greece. It consists of a basement shop, two shops and an apartment on the ground floor, and an apartment on the first floor. In September 1981, Husband paid $7,000 for an option to purchase the historical house for $125,000. Between 1982 and 1990, Husband made payments on the loan used to finance the purchase after Husband exercised his option. Wife testified the parties

rented out the historical house in Greece during the marriage. The court found Husband owned an option to purchase the historical house prior to the marriage. The terms of the sale required payments over eight years, of which the last several occurred during the marriage. The court found the parties used income from the rental of the property in support of the marriage.

█ The four-story building is also located in Sparta, Greece. Wife testified that during the marriage, the family returned to Greece for two months each summer. For the first several years, the parties split the summer between the parties' parents' homes. In approximately 1998, Wife wanted a home in Greece. According to Wife, Husband owned the bare land in Sparta at the time of the marriage, and a retail and office building had been built and added onto during the marriage. When Wife decided she wanted a home in Sparta, the parties added a fourth-story apartment onto the three-story building. Wife testified her father managed the construction project without remuneration.

As to the four-story building, Husband testified he owned the land prior to the marriage and had already applied for permits to build. Husband testified he initially built the first floor of retail units, rented them out, and gradually built the remaining floors with his money and "a little" help from his father. He argues each floor is a separate parcel of real estate because the custom in Greece is to purchase and sell by the floor rather than by the building. The court found the permit for the construction of the four-story building was obtained in 1986, after the marriage, and construction began that year. The court found numerous loans were taken on the property, and they were fully paid by money earned during the marriage. The court further found Wife's father was heavily involved in the construction of the building; Wife's mother was involved in the management of the building; and neither parent was paid for the efforts. Finally, the court found the income from the property was used in support of the marriage by being deposited into a Greek account, of which Wife was a co-owner. The court concluded Husband's equity in the property at the time of the marriage was transmuted into marital property and all improvements constructed and paid for during the marriage were marital property.

142

 "The term 'marital property' ... means all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation ... regardless of how legal title is held...." S.C.Code Ann. § 20-3-630(A) (2014). "Property acquired prior to the marriage is generally considered nonmarital." *Pirri v. Pirri*, 369 S.C. 258, 270, 631 S.E.2d 279, 285 (Ct.App.2006). Nonmarital property "may be transmuted into marital property if it becomes so commingled with marital property that it is no longer traceable, is titled jointly, or is used by the parties in support of the marriage or in some other way that establishes the parties' intent to make it marital property." *Wilburn v. Wilburn*, 403 S.C. 372, 384, 743 S.E.2d 734, 740 (2013) (citing *Trimnal v. Trimnal*, 287 S.C. 495, 497–98, 339 S.E.2d 869, 871 (1986)). "[T]ransmutation is a matter of intent to be gleaned from the facts of each case." *Johnson v. Johnson*, 296 S.C. 289, 295, 372 S.E.2d 107, 110 (Ct.App.1988). The party claiming nonmarital property has transmuted into marital property must produce evidence that the parties regarded the property as common property during the marriage. *Id.* at 295, 372 S.E.2d at 110–11. "Such evidence may include placing the property in joint names, transferring the property to the other spouse as a gift, using the property exclusively for marital purposes, commingling the property with marital property, using marital funds to build equity in the property, or exchanging the property for marital property." *Id.* at 295, 372 S.E.2d at 111.

We find no merit to Husband's reliance on *Fitzwater v. Fitzwater*, 396 S.C. 361, 721 S.E.2d 7 (Ct.App.2011) and *Peterkin v. Peterkin*, 293 S.C. 311, 360 S.E.2d 311 (1987). In *Fitzwater*, this court affirmed the family court's finding that the husband's nonmarital property was not transmuted. 396 S.C. at 368, 721 S.E.2d at 11. The parties in *Fitzwater* never used the "property as a marital home, never placed the property in [the wife's] name, and [the husband] never made any substantial improvements to the property during the marriage." *Id.* Also, although the husband in *Fitzwater* mortgaged the property during the marriage, the proceeds were used to pay for improvements to nonmarital property. *Id.* In this case, there is abundant evidence the properties at issue were either mortgaged numerous times and the proceeds were

used in support of the marriage or income from the properties was used in support of the marriage. Furthermore, many of the properties were mortgaged at the time of the marriage, and the notes were paid off using marital funds.

We likewise distinguish *Peterkin*, in which the court stated the following: "Merely using the income derived from these items in support of the marriage does not transmute them into marital property." 293 S.C. at 313, 360 S.E.2d at 313. In *Peterkin*, the husband inherited land, a trust, and stocks. *Id.* at 312, 360 S.E.2d at 312. The income generated from the assets was used in support of the marriage. *Id.* Conversely in this case, the equity in the assets was built by marital funds by either paying for the assets, by paying off numerous mortgages, or by building property on unimproved land.

We find all four of these properties were utilized by the parties in support of the marriage and were accordingly marital property. *See Johnson*, 296 S.C. at 295, 372 S.E.2d at 110 (explaining utilization of property by the parties in support of the marriage is evidence of transmutation); *Calhoun v. Calhoun*, 339 S.C. 96, 106, 529 S.E.2d 14, 20 (2000) ("When property is determined to have been transmuted, the entire property, not just a portion of the property, is included in the parties' marital property....").

## IV. Equitable Distribution Percentage

 Husband argues the family court erred in equally dividing the marital estate without considering his superior contribution to the assets of the marriage. He also argues the family court allocated income-producing assets to Wife to give her "backdoor alimony." [3] We disagree.

In making an equitable apportionment of marital property, the family court "must give weight in such proportion as it finds appropriate" to all of the following factors:

(1) the duration of the marriage together with the ages of the parties at the time of the marriage and at the time of the divorce ...; (2) marital misconduct or fault of either or both parties, whether or not used as a basis for a divorce as

---

**3.** During the hearing, the family court found there was misconduct by both parties, and the divorce was granted on one year's continuous separation. Neither party sought alimony.

such, if the misconduct affects or has affected the economic circumstances of the parties, or contributed to the breakup of the marriage ...; (3) the value of the marital property.... The contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value of the marital property, including the contribution of the spouse as homemaker; provided, that the court shall consider the quality of the contribution as well as its factual existence; (4) the income of each spouse, the earning potential of each spouse, and the opportunity for future acquisition of capital assets; (5) the health, both physical and emotional, of each spouse; (6) the need of each spouse or either spouse for additional training or education in order to achieve that spouses's (sic) income potential; (7) the nonmarital property of each spouse; (8) the existence or nonexistence of vested retirement benefits for each or either spouse; (9) whether ... alimony has been awarded; (10) the desirability of awarding the family home ...; (11) the tax consequences to each or either party ...; (12) the existence and extent of any support obligations, from a prior marriage or for any other reason or reasons, of either party; (13) liens and any other encumbrances upon the marital property ...; (14) child custody arrangements and obligations at the time of the entry of the order; and (15) such other relevant factors as the trial court shall expressly enumerate in its order. S.C.Code Ann. § 20–3–620(B) (2014).

"The division of marital property is within the discretion of the family court and will not be disturbed on appeal absent an abuse of discretion." *Crossland v. Crossland,* 408 S.C. 443, 455, 759 S.E.2d 419, 425 (2014) (citing *Craig v. Craig,* 365 S.C. 285, 290, 617 S.E.2d 359, 361 (2005)). "Equitable distribution of marital property 'is based on the recognition that marriage is, among other things, an economic partnership.'" *Id.* at 456, 759 S.E.2d at 426 (quoting *Morris v. Morris,* 335 S.C. 525, 531, 517 S.E.2d 720, 723 (Ct.App. 1999)). "Upon dissolution of the marriage, marital property should be divided and distributed in a manner which fairly reflects each spouse's contribution to its acquisition, regardless of who holds legal title." *Morris,* 335 S.C. at 531, 517 S.E.2d at 723. "The ultimate goal of apportionment is to divide the marital estate, as a whole, in a manner that fairly

reflects each spouse's contribution to the economic partnership and also the effect on each of the parties of ending that partnership." *King v. King*, 384 S.C. 134, 143, 681 S.E.2d 609, 614 (Ct.App.2009) (citing *Johnson*, 296 S.C. at 298, 372 S.E.2d at 112). "On review, this court looks to the overall fairness of the apportionment, and if the end result is equitable, that this court might have weighed specific factors differently than the family court is irrelevant." *Morris*, 335 S.C. at 531, 517 S.E.2d at 723 (citing *Johnson*, 296 S.C. at 300–01, 372 S.E.2d at 113).

In regard to equitable distribution, the court found "[b]ased on all relevant evidence and applicable law, it is fair and equitable to apportion the overall marital estate 50% to Husband and 50% to Wife." In support of the award, we note the parties were in a long-term marriage; any misconduct was disregarded by the family court; both are in good health; Wife has very low earning potential; neither party has obligations from a previous marriage; and Wife is not receiving alimony. Although Husband provided far greater direct contributions to the parties' assets, Wife contributed in the traditional stay-at-home spouse role that the parties contemplated and agreed upon. As to Husband's "back door alimony" argument, we find no merit. Husband relies on *Wannamaker v. Wannamaker*, 305 S.C. 36, 41, 406 S.E.2d 180, 183 (Ct.App. 1991), in which this court found the family court erred by apportioning the wife an interest in the husband's medical partnership, which he established *after* the separation. We also find no merit in Husband's reliance on *Berry v. Berry*, 294 S.C. 334, 335, 364 S.E.2d 463, 463–64 (1988), in which the supreme court affirmed this court's decision prohibiting the family court from using equitable division of marital property to award alimony barred by adultery. In *Berry*, the family court indicated it had increased the wife's equitable distribution share to compensate for the alimony which could not be awarded. *Id.* at 335 n. 1, 364 S.E.2d at 463 n. 1. This court reversed and remanded. *Id.* at 335, 364 S.E.2d at 463. In affirming, the supreme court made clear "the preclusion of an alimony award to a spouse cannot be used to increase an equitable distribution award." *Id.* at 335, 364 S.E.2d at 464. However, the court also made clear the family court could still consider two of the relevant factors used when equitably

dividing marital property: (1) the present income of the parties; and (2) the effect of distribution of assets on the ability to pay alimony and support. *Id.* We find no error by the family court in its apportionment of the marital estate. *See Crossland,* 408 S.C. at 456–57, 759 S.E.2d at 426 (explaining that though there is no recognized presumption in favor of a fifty-fifty division, an equal division of marital property is an appropriate starting point for a family court in dividing the estate of a long-term marriage).

## V. Highway 14 Land

 Husband argues the family court erred in exercising jurisdiction over the Highway 14 property. We disagree.

Husband testified he owned the property fifty-fifty with his brother. The Highway 14 deed indicated the property was owned solely by Husband. The court found the property was in Husband's individual name, the net fair market value of the property was $225,305.05, and the property was marital.

 Generally, the "jurisdiction of a court depends upon the state of affairs existing at the time it is invoked. If jurisdiction once attaches to the person and subject matter of the litigation the subsequent happening of events will not ordinarily operate to oust the jurisdiction already attached." *Gardner v. Gardner,* 253 S.C. 296, 302, 170 S.E.2d 372, 375 (1969). In *Gilley v. Gilley,* 327 S.C. 8, 9–10, 488 S.E.2d 310, 311 (1997), the wife brought an action in circuit court to partition property the wife and the husband owned as tenants-in-common. The husband subsequently brought an action in family court for equitable distribution. *Id.* at 10, 488 S.E.2d at 311. Citing *Gardner,* the supreme court found the circuit court properly maintained jurisdiction based on the status of the case at the time of filing. *Id.* at 10–11, 488 S.E.2d at 312. In the present case, the parties were properly in family court at the time the brother filed his action in circuit court. Thus, the family court maintained jurisdiction.

## VI. Attorney's Fees

 Husband argues the family court erred in awarding Wife more than $135,000 in attorney's fees and costs because she has the ability to pay her own fees. Husband also argues

he should not have to pay fees incurred by Wife's experts, paralegals, and other members of Wife's attorney's staff. Husband next argues the order requiring him to pay Wife's attorney's fees diminishes his portion of the equitable distribution. Husband also argues the court ignored the fact that each party has the ability to pay their own fees and over-emphasized Wife's attorney's involvement with valuing the assets. Husband finally argues he "won" on some designations of assets and valuations. Wife argues the fact Husband "won" on seven of forty-seven disputes "hardly demonstrates that Wife failed to obtain a beneficial result."

 The family court may order one party to pay a reasonable amount to the other party for attorney's fees and costs incurred in maintaining an action for divorce. S.C.Code Ann. § 20-3-130(H) (2014). In deciding whether to award attorney's fees and costs, the court should consider the following factors: (1) the ability of each party to pay his or her fees; (2) beneficial results obtained; (3) the financial conditions of the parties; and (4) the effect a fee award will have on each party's standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992).

In this case, the court exhaustively considered the factors in determining to award fees, considered the factors to determine the amount of fees, and awarded Wife $135,117.33 in attorney's fees and costs. The court also found, "Husband admitted his failure to be truthful in deposition testimony, and Wife proved his deceit at trial" and "[t]here is limited evidence Husband made reasonable efforts to resolve this matter without contested litigation." *See Bodkin v. Bodkin*, 388 S.C. 203, 223, 694 S.E.2d 230, 241 (Ct.App.2010) (noting a party's failure to cooperate and behavior prolonging proceedings may be considered in awarding attorney's fees).

We find no reversible error in the family's court's award of attorney's fees to Wife. We find Husband demonstrated the ability to earn a substantial income from his restaurants and investments; Wife is not employed and has not worked other than in support of the marriage or the parties' businesses throughout her adult life; Wife prevailed on the transmutation and valuation of many assets; and Husband is in a superior financial position to pay attorney's fees.

148

 We likewise find no error in the amount of fees awarded by the family court. In determining the amount of reasonable attorney's fees, the court should consider the following six factors: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) the professional standing of counsel; (4) the contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services. *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991) (citing *Donahue v. Donahue*, 299 S.C. 353, 365, 384 S.E.2d 741, 748 (1989)). "The question of whether to award attorney fees is one addressed to the sound discretion of the trial court." *Ariail v. Ariail*, 295 S.C. 486, 489, 369 S.E.2d 146, 148 (Ct.App.1988) (citing *O'Neill v. O'Neill*, 293 S.C. 112, 120, 359 S.E.2d 68, 73 (Ct.App.1987)).

 Husband cites numerous cases from foreign jurisdictions for the proposition that fees incurred by paralegals and law clerks are not properly part of an award of attorney's fees. However, none of the cases cited pertain to an action for divorce.

We find the family court is not prohibited from awarding fees incurred by paralegals and law clerks in its award of attorney's fees. *See Siraco v. Astrue*, 806 F.Supp.2d 272, 279–80 (D.Me.2011) (analyzing the reasonableness of attorney's fees in a Social Security disability award case and finding them reasonable despite the inclusion of paralegal time); *id.* at 278 ("[I]f a firm can organize its practice efficiently by using less of its lawyers' time, yet still produce high quality legal work, it should not be penalized in the fee it can recover. A different conclusion would lead this and other lawyers to do more of the work themselves and delegate less to paralegals, to no apparent gain."); *Newport v. Newport*, 759 S.W.2d 630, 636–37 (Mo.Ct.App.1988) (providing that in an action for dissolution of a marriage, reasonable paralegal fees were allowable where there was direct evidence in the form of an itemized bill); *id.* at 637 (stating "the presumptive expertise of the trial judge" in assessing the reasonableness and necessity of attorneys' fees extended to paralegal fees); *see also* James J. Watson, J.D., Annotation, *Attorneys' Fees: Cost of Services Provided by Paralegals or the Like as Compensable Element of Award in State Court*, 73 A.L.R.4th 938 at § 3 (1989) (listing courts that have "held or recognized that the value or

cost of legal services performed by paralegals or other similarly qualified persons is recoverable as a separate element or component of attorneys' fees awards under statutes, rules of court, or decisional law authorizing awards of attorneys' fees" (footnote omitted)); *id.* (including Alaska, Arizona, California, DC, Florida, Illinois, Indiana, Massachusetts, Minnesota, Missouri, Montana, North Carolina, Oregon, Texas, and Wisconsin). Thus, we find no error in the family court's award of fees or in the amount awarded.

## CONCLUSION

For the foregoing reasons, the family court's order is **AFFIRMED.**

GEATHERS and MCDONALD, JJ., concur.